Troutman Pepper Locke LLP
3000 Two Logan Square, Eighteenth and Arch Streets
Philadelphia, PA 19103

troutman.com

**MEMO ENDORSED**

September 12, 2025

Hon. Jessica G. L. Clarke
United States District Court, Southern District of New York
500 Pearl Street
New York, New York, 10007
ClarkeNYSDChambers@nysd.uscourts.gov

Re:   Old Slip Benefits & Insurance Services, LLC v. Allstate Insurance Company, Case
      No. 25-CV-1110 (JGLC)

Dear Judge Clarke:

Defendant Allstate Insurance Company ("Allstate") and Plaintiff Old Slip Benefits & Insurance Services, LLC ("Plaintiff") submit this Joint Letter addressing Allstate's Federal Rule of Civil Procedure (the "Rules") 37(a)(3) motion to compel answers to questions asked under Rule 30 and to reopen the deposition of James Lukezic and Plaintiff.

## Allstate's Position

On August 26, 2025, Allstate deposed James Lukezic in his individual capacity and as a designated designee of Plaintiff. Allstate's 30(b)(6) Notice is attached as **Exhibit A** and the Notice of Deposition of James Lukezic is attached as **Exhibit B**. Allstate seeks to reopen the deposition because Plaintiff's counsel interfered with and obstructed the deposition with repeated speaking objections and improper instructions to the witness not to answer questions based on relevance, improper work-product objections, and alleged privacy concerns. Plaintiff's designee and its counsel even refused to answer questions about the customer list, which was the subject of a previous letter motion (ECF No. 65) that the Court denied without prejudice because Your Honor said Allstate could inquire about it at the deposition.

*First*, at the start of the deposition, Plaintiff's counsel instructed Mr. Lukezic not to answer any questions about what he did to prepare for the deposition as Plaintiff's corporate designee because the question "invades the work-product privilege." Deposition Transcript ("Tr.") 11: 18-23, attached as **Exhibit C**. Counsel's objections continued throughout the deposition whenever Allstate inquired about Mr. Lukezic's preparations. *See, e.g.,* Tr. 14:10-14; 14: 19-22; 20: 3-14; 21: 15-18; 66: 3-12.

Counsel's repeated objections and instructions to the witness not to answer questions based on the attorney work-product doctrine were improper. Asking what the witness did to prepare for a 30(b)(6) deposition does not implicate the work-product doctrine. *See Application of Minebea Co.,* 143 F.R.D. 494, 500 (S.D.N.Y. 1992) (rejecting the argument that questions asking the witness to state whether he had met with anyone or reviewed materials to prepare implicated the work-product doctrine and compelling the witness to answer). Allstate was entitled to ask those questions to test Mr. Lukezic's ability to represent Plaintiff as its corporate designee. *Kyoei Fire & Marine Ins. Co., v. M/V Maritime Antalya*, 248 F.R.D. 126, 152 (S.D.N.Y. 2007) ("Producing an unprepared [Rule 30(b)(6)] witness is tantamount to a failure to appear."). This is especially true considering Mr. Lukezic's inability to answer multiple general questions about the Plaintiff LLC he purported to represent, including when it was formed, the title of its employees, who its members are, or when it last paid rent.[1] Because a

---

[1] Tr. 17: 23-25; 24: 6-8; 24: 20-21; 42: 21-23; 69: 10-12.

September 12, 2025
Page 2

30(b)(6) designee unprepared to testify to the designated topics is deemed not to have appeared for the deposition, Allstate seeks to reopen the deposition to inquire into the topics it expressly noticed.

**Second**, Plaintiff's counsel improperly instructed Mr. Lukezic not to answer questions based on relevance and alleged privacy concerns. Rule 30(c)(2) expressly limits the instances when a deponent can be instructed not to answer: "when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)." *Fashion Exch. LLC v. Hybrid Promotions, LLC*, 333 F.R.D. 302, 307 (S.D.N.Y. 2019) (citing Fed. R. Civ. P. 30(c)(2)).

Plaintiff's counsel improperly instructed Mr. Lukezic not to answer questions based on relevance, even though that is not a recognized limitation under the Rules. *See, e.g.,* Tr. 25: 12-23; 80: 8-9; *see also Fashion Exch. LLC,* 333 F.R.D. at 307 ("[I]t is improper to instruct a witness not to answer a question on the basis of relevance."). One such objection responded to Allstate's question of whether Old Slip Registered Investment Advisors, LLC maintains a customer list. Tr. 78: 16-18. After being prompted by the deponent to object, counsel instructed him "not to answer" because the "Judge has ruled that it's not relevant to the case." Tr. 80: 4-9. Contrary to counsel's instructions to his client, the Court denied Allstate's motion to compel the customer list precisely because Allstate *could* inquire about it during Mr. Lukezic's deposition and even invited Allstate to refile the request based on what it finds out during the deposition. The Court did so after Plaintiff invited Allstate to question Mr. Lukezic about the customer list at his upcoming deposition "to create a more well-established record." ECF No. 64 at 5; *see also* ECF No. 64-4 at 8 (Lukezic affirming that he is "happy to answer any questions about these issues in [his] upcoming deposition"). This invitation was false because Mr. Lukezic refused to answer any questions about the customer list, including whether the entity even maintains such a list and what information the list generally contains. Tr. 78: 12-18; 19: 22-25.

Similarly, counsel instructed Mr. Lukezic not to answer questions about Plaintiff's ownership and its affiliated entities, because they invade "financial and personal privacy of third parties." Tr. 18-19; 84-86; 89: 21-23. This is not a recognized basis to instruct a deponent not to answer questions. Even if it was, the subject area is relevant. Plaintiff itself put its ownership at issue when Mr. Lukezic revealed that Plaintiff is owned by an *irrevocable trust* and not Mr. Lukezic, as it falsely represented to Allstate at the start of their relationship, which violated the parties' Agreement. *Compare* Tr. 18: 6-25 *with* The Agency Ownership Disclosure Form at 1, attached as **Exhibit D** (disclosing Mr. Lukezic as Plaintiff's "100%" owner); *see also* Agreement at 2 ("Agency represents and warrants that prior to the execution of this Agreement, Agency has provided to the Company the full names and addresses of its officers, directors and any persons who own any shares of or interest in Agency.").[2] The Court should thus reopen the deposition to allow Allstate to inquire into these issues.

**Third**, after refusing to agree that all objections except to the form of the question are reserved until the time of trial, Plaintiff's counsel made repeated speaking objections, which suggested answers to Mr. Lukezic in response to Allstate's questions, in violation of Rule 30(c)(2) and engaged in lengthy, disruptive debates with Allstate's counsel.[3] It "is not counsel's place to interrupt if a question is

---

[2] Plaintiff's pleadings also repeatedly, and apparently falsely, represented Mr. Lukezic as "Old Slip's owner." Amended Complaint, ECF No. 14-2 ¶¶ 9, 42, 43, 52, 53, 57, 59, 61, 81, 82, 84. The Amended Complaint even claimed Mr. Lukezic "formed Plaintiff" to "own and operate the new Allstate" business, *id.* ¶ 11, which was a misrepresentation based on Mr. Lukezic's testimony that Plaintiff was formed back in 2018 for unrelated reasons, Tr. 43: 22-25; 44:3-8. The Amended Complaint similarly misrepresented that Mr. Lukezic was the owner of the affiliated entities. *Compare* Amended Complaint ¶¶ 9, 10, 43, 52, 59, 81, 84 *with* Tr. 81: 9-11; 84: 10-14.

[3] *See, e.g.,* Tr. 15:6-16:20; 19: 2-3; 24: 3-5; 23: 21-22; 39: 12; 58: 4, 18; 59: 9, 16; 60: 5-7; 61: 21-22; 62: 17-19; 63: 23-25; 64: 7-11; 72: 16-17; 74: 6-7; 85: 11-14; 86: 5-8; 87: 6-7; 103: 12-13; 105: 23; 115-121; 138: 14-

perceived to be potentially unclear to the witness"—the "witness should make the determination." *Fashion Exch. LLC,* 333 F.R.D. at 305 (citing *Phillips v. Mfrs. Hanover Tr. Co.*, No. 92-CV-8257 (KTD), 1994 WL 116078, at *4 (S.D.N.Y. Mar. 29, 1994)). The record is clear that Mr. Lukezic relied on the improper objections as cues and refused to answer Allstate's questions after his counsel objected.[4] Courts have ordered deponents to appear for a continued deposition for this reason alone. *See, e.g., Meyer Corp. U.S. v. Alfay Designs, Inc.*, No. CV 2010 3647 CBA MDG, 2012 WL 3536987, at *6 (E.D.N.Y. Aug. 13, 2012) (ordering plaintiff to provide specific responses to each question the witness failed to respond after speaking objections); *Sicurelli v. Jeneric/Pentron, Inc.*, No. 03CV4934(SLT)(KAM), 2005 WL 3591701, at *9 (E.D.N.Y. Dec. 30, 2005) (permitting counsel to re-depose witnesses whose depositions were interrupted by improper objections) *report and recommendation adopted,* No. 03CV4934 SLT KAM, 2006 WL 681212 (E.D.N.Y. Mar. 14, 2006).

Because these interruptions and obstructions frustrated Allstate's ability to take Mr. Lukezic's and Plaintiff's deposition, the Court should order Plaintiff to produce its designee for a second deposition, and require Plaintiff and its counsel to pay Allstate its fees for having to prepare and file this motion.

## Plaintiff's Position

### Work Product Objections
Asking a witness what specific documents he reviewed to prepare for the deposition may invade the attorney-work product privilege, because the selection of the documents to be reviewed may reveal attorney thoughts and strategy. *Gould v. Mitsui Mining & Smelting*, 825 F.2d 676 (2d Cir. 1987) (citing *Sprok v. Peil*, 759 F.2d 312 (3d Cir. 1985)); *Aviles v. S&P Glob., Inc.*, 583 F. Supp. 3d 499, 505 (S.D.N.Y. 2022); *Hanover v. Plaquemines Par. Gov't*, 304 F.R.D. 494, 500 (E.D. La. 2015).

When Lukezic's counsel objected to Allstate's counsel asking Lukezic what he did to prepare for the deposition, Allstate's counsel stipulated that: **"I don't intend to get into specific what was discussed, what was shown to him**." Tr., Page 12, lines 15-19, attached as **Exhibit C**.

In breach of his own stipulation, Allstate's counsel proceeded to ask Lukezic what specific documents were shown to him to prepare for the deposition.[5]

Despite this, Lukezic's counsel gave Allstate's counsel wide range to ask Lukezic numerous questions about the types of documents he reviewed and his meetings with his lawyer, which Lukezic answered without objection.[6]

---

16; 140: 9-10, 13; 144: 14-15; 149: 7-8; 161: 7-8; 165: 15-16; 166: 14-18; 167: 11-14; 188: 24-25; 193: 11, 15-18, 23-24; 194: 24; 195: 19; 200: 12; 270: 7-9.

[4] *See, e.g.,* Tr. 23: 23; 24: 6-8; 39: 15-16; 58: 5-6, 19-20; 59: 11-12; 60: 10-12; 61: 25; 62: 2, 5-6, 8-10, 20; 64: 14; 72: 23-24; 74: 8; 85: 19-20; 102: 11-12; 138: 17-18; 149: 9-10; 165: 17-25; 195: 20-22.

[5] The only 3 specific questions counsel instructed Lukezic not to answer based on work product privilege were:
"Q. Did you review the corporate documents of those companies in order – order to prepare for this deposition today", Tr., Page 14, Lines 6-8;
"Q. You didn't look for that [referring to the irrevocable family trust agreement] in preparation for today's deposition?" Tr. Page 19, line 15, Page 20, line 2; and
"Q. Did you review the corporate documents of Old Slip Benefits & Insurance Services, LLC and BFL Insurance Group LLC to be able to be able to answer my questions about the relationship between those two entities?" Tr., page 65, Lines 21-25, Page 66, Lines 2.

[6] Lukezic answered **all** the following questions without objection:

***Questions Relating to the Customer Information***

Here again, Allstate misrepresents what took place at the deposition. Contrary to Allstate's suggestion, Allstate had free reign to ask Lukezic numerous questions about the separate companies' customers and business, which Lukezic answered without objection.

Lukezic answered numerous questions about the nature of Old Slip Retirement Advisors' business and its customers, including whether the entity has a list of its customers. Tr., at 77-82 (he testified on page 78 that "there's a list"). He testified the company manages over $300 million in assets. Tr., Page 88, Lines 18-20. He explained the principal business of that entity is a) consulting large companies as an ERISA fiduciary for their corporate retirement plans, and b) ancillary to that, providing wealth management for high net worth individuals ($2.2 million or more). Tr., Page 77. He described the two types of customers, namely a) the corporate institutional clients which were providing a 401(k) plan to their employees, and b) the wealthy accredited individuals. Tr., Page 78.

He testified about Old Slip Capital Partners LLC, Tr., Pages 55-70, 76, and Old Slip Capital Management, Inc. Tr., Pages 82-83. He testified about Old Slip Capital Management, Inc's broker-dealer license and the types of financial products it provided. Tr., Pages 83-84. He explained that to have a FINRA license, individuals need to be affiliated with a broker-dealer, and in this case, this was Old Slip Capital Management. Tr., Page 88.[7]

Despite obtaining all of this information, Allstate's counsel insisted on prying into the details of the customer information. In response, Lukezic expressed his concern that as a licensed fiduciary, he has taken an oath to protect his client's privacy and their investment strategies, and that divulging

---

a. Lukezic answered several questions without objection about the types of documents Lukezic reviewed in preparation for the deposition, testifying he reviewed the agency agreement, EA manual, his emails, and corporate documents of various entities. Tr., Pages 12-13.

b. Lukezic answered Allstate's questions without objection about whether he met with counsel, for how long, and whether he spoke with counsel in person or by phone. Tr., Pages 16-17.

c. When Allstate's counsel asked Lukezic: "Q. What did you do to prepare for answering the – the subject area marked 8?" Tr., Page 14, Lines 16-17, Lukezic's counsel again made clear that he would allow the witness to answer the questions in general terms, but not the identity of specific documents the attorney chose to review with him. Tr., Page 14, Lines 18-22.

d. When Allstate's counsel asked Lukezic (condescendingly): "You didn't look for that information [about the irrevocable trust] in preparation for your testimony today?," Lukezic answered this question without objection. Tr., Page 24, Lines 24-25, Page 25, line 2.

e. When Allstate's counsel asked Lukezic (condescendingly): "That [the date of the irrevocable trust] wasn't something you looked for in preparation for today's deposition", Lukezic answered this question without objection. Tr., Page 19, line 15-17.

f. On Page 65, when Allstate's counsel asked Lukezic what did he do to prepare to answer questions at the deposition about the relationship between Old Slip Benefits and BFL Insurance Group, Lukezic answered this question without objection. Tr., Page 65.

Contrary to Allstate's statement, he did answer when Plaintiff was formed (Tr. 42), its employees (Tr. 16, 67), its owner (Tr. 18), and when it last paid rent. (Tr. 69) (not even listed an issue in the 30(b)(6) notice).

The record reflects that, contrary to Allstate's suggestion, over the course of the full-day 293-page deposition, Plaintiff's counsel made very few objections, and on the few occasions when objections were stated, they were intentionally stated in a short and concise manner, such as "Objection, Form", "Objection, Vague", or "Objection, Time Frame", so as ***not*** to suggest an answer, and were certainly not speaking objections.

[7] Allstate's document requests only sought the "customer list of Old Slip Capital Partners, LLC", ECF Doc. 64-Page 6, which does not have a customer list, because as Lukezic testified at Page 54 of his deposition, this entity (whose name was changed to BFL Group Insurance LLC) was only used as shell subsidiary of Old Slip Benefits & Insurance to enter into the lease and purchase the assets. Tr., Pages 55, 70-71.

more information about the nature of the information would infringe upon their right to financial privacy and his duties as a fiduciary. Tr., Page 79.

Before you can compel a company to produce its entire customer list, you must show what would be the point of requiring production? In other words, what would it even show?  Why do you need the company's entire customer list?  *DDS Inc. v. Lucas Aerospace Power Transmission Corp.*, 182 F.R.D. 1, 11 (N.D.N.Y. 1998) (refusing to order production of entire customer list); *Travel Center v. Royal Cruise Line Ltd.,*  2000 WL 306934, at *4 (D. Conn. 2000) (same).  Here, the only possibly relevant information is the list of Allstate property/casualty customers which Lukezic solicited to purchase investments, and as Lukezic testified, the answer to that question is none.

Given that Lukezic testified openly about the nature of the customers and the business, the further questions about the specific type of information on the customer list were nothing more than a power play designed to annoy and harass Lukezic. The customer list of Old Slip Registered Investment Advisors, which is not a party, would not show anything, and its disclosure would invade the financial privacy of third parties.

It has already been established, through Lukezic's detailed declaration, ECF Doc. 64-4, at 6-8, that the customer information of Old Slip Registered Investment Advisor is highly secret confidential information, it contains private financial information of third parties, he takes measures to keep the information confidential, the list was created by the company through years of time and effort, and the information is not publicly available.

Having answered all of Allstate's questions about the companies, their business, and their customers, and given that it is established that this information is a trade secret, it was appropriate for Lukezic to refuse to give information about the nature of the information on the customer list.  As Lukezic noted, "I don't discuss the details of my private clients. . . I have taken an oath to protect my client's privacy and their investment strategies."  Tr., Page 79, Lines 5-6.

Fed. R. Civ. P. 30[c](2) provides a party may refuse to answer a deposition question when necessary to preserve a privilege, or protect from an examination conducted to unreasonably annoy, embarrass or oppress.  *Kamens v. Horizon Corp.*, 81 F.R.D. 444, 445 (S.D.N.Y. 1999); *Riddell Sports v. Brooks*, 148 F.R.D. 55, 557 (S.D.N.Y. 1994). The refusal of a witness not to answer questions that could implicate disclosure of a trade secret is proper and, in fact, necessary to maintain protection over such information. *Wilson v. Martin County Hosp. Dist.*, 149 F.R.D. 553, 555 (W.D.Tex.1993) (questions relating to private third party patient information); *Luc Vets Diamant v. Akush*, 2006 WL 258293, at *2 (S.D.N.Y. 2006) (questions that could implicate disclosure of a trade secret).

### Questions Relating to the Private Family Trust
Contrary to Allstate's suggestion, Lukezic answered all of Allstate's questions about ownership of the plaintiff entity, testifying it was a New York LLC, owned by the Falconer Holdings Trust, formed under Nevada law, established June 2018.  Tr., Pages 18,23-24.  He testified that the Trust was established for the Lukezic family.  Tr., Page 84, Lines 16-21. Lukezic answered all of Allstate's questions about the identity of the trustee, testifying the trustee is Cyrus Borzooyeh. Tr., Page 90. The only question on this topic which he refused to answer was the identity of the beneficiaries of this private family trust.  Tr. Page 89, Lines 20-23. This information is a highly private family matter, and has no bearing whatsoever on the issues in this case, and as a result, the question should be disallowed. *Cobell v. Norton*, 226 F.R.D. 67, 82 (D.D.C. 2005) (disallowed questions about "management of trust assets," as such discovery "stray[s] beyond the scope of the underlying litigation"); *Wauchop v. Domino's Pizza*, 138 F.R.D. 539, 551 (N.D. IN. 1991) (asking about shares owned by family members invades third party privacy and should not be allowed); *Kamens*, 81 F.R.D. at 446 (party's personal finances).

**troutman**
**pepper locke**

September 12, 2025
Page 6

/s/ *David T. Azrin*
Wuersch & Gering
88 Pine Street, 20th Floor
New York, New York 1005
215.509.4745
David.azrin@wg-law.com
*Attorney for Plaintiff*


/s/ *A. Christopher Young*
A. Christopher Young
300 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103
Christopher.young@troutman.com
215.981.4190
*Attorney for Defendant*

Defendants' motion to compel is GRANTED. The yes or no questions Defendants' counsel posed on pages 14:6-8, 19:25-20:2, 65:22-66:2, regarding whether Mr. Lukezic reviewed certain documents or information in preparation for the 30(b)(6) deposition were not privileged. Furthermore, Mr. Azrin's instructions not to answer based on relevance and purported privacy concerns were likewise inappropriate, as were any speaking objections. Plaintiff is free to designate any testimony that relates to confidential or private matters subject to the Protective Order in this case. Plaintiff and Mr. Lukezic's depositions are reopened for the limited purpose of addressing the matters at issue herein. Pursuant to Federal Rule of Civil Procedure 37(a)(5)(A), Defendant is entitled to its fees in making this motion. The Clerk of Court is respectfully directed to terminate ECF No. 70.

SO ORDERED.

*Jessica Clarke*

JESSICA G. L. CLARKE
United States District Judge

Dated: September 16, 2025
      New York, New York